```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                           TAMPA DIVISION
```

NINA STEPHENS,

    Plaintiff,

v.                                    Case No. 8:17-cv-1338-T-33AEP

TIME CUSTOMER SERVICE, INC.,
SEVERANCE PLAN and HENRY
LESCAILLE, as Plan
Administrator,

    Defendants.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendants Time Customer Service, Inc., Severance Plan and Henry Lescaille's Motion to Dismiss (Doc. # 8), filed on August 1, 2017. Plaintiff Nina Stephens filed a response on August 14, 2017. (Doc. # 10). For the reasons that follow, the Motion is denied.

**I.    Background**

For many years, Stephens worked for Time Customer Service, Inc., which "is an organization that provides fulfillment services in the publishing industry services." (Doc. # 1 at ¶¶ 8, 12). On July 23, 2015, Stephens "received a termination letter and severance package," with her

1

termination becoming effective on September 11, 2015. (Id. at ¶ 13). Because she was an employee of Time Customer Service, Inc., Stephens alleges she is a participant in the Time Customer Service, Inc., Severance Plan (TCS Plan). (Id. at ¶¶ 9, 11). Yet, "[t]he termination letter stated that Stephens was eligible for certain payments and benefits under the *Time Inc. Severance Plan for Regular Employees (Time Inc. Plan)*" — a different plan. (Id. at ¶ 14)(emphasis added). Eligibility for benefits was contingent on Stephens signing a release, which she did. (Id.).

"The Time Inc. Plan provides, in pertinent part, that persons covered by the plan receive severance pay in an amount equal to two weeks of weekly pay for each year of service." (Id. at ¶ 15). In contrast, the TCS Plan "provides that [Time Customer Service], in its discretion, may adopt a severance program" and that "severance benefits are to be paid under the terms of that program." (Id. at ¶ 9). Stephens had 17.97 years of service with Time Customer Service at the time of her severance but "she was offered only one week's severance pay for each year of service." (Id. at ¶ 16).

Then, on December 8, 2015, "Stephens filed a written claim for benefits with both the Plan Administrator for the TCS Plan and the Plan Administrator for the Time Inc. Plan."

2

(Id. at ¶ 17). "In her claim, among other things, she requested that each of these plan administrators provide to her and incorporate into her claims file all the calculations they made that were relevant to the determination of Stephens'[s] benefits under" the Time Inc. Plan and under the TCS Plan. (Id.). Also in her claim, Stephens requested numerous other documents including, among others: "all benefit booklets and similar materials that referred to the provisions" of the TCS Plan or Time Inc. Plan; "all board resolutions" pertaining to the TCS Plan and the Time Inc. Plan; "all correspondence relating to her claim for benefits" under the TCS Plan and Time Inc. Plan; and "any documents, board resolutions or administrative actions that modified or amended the plan terms" of either plan. (Id.). "These requests were not addressed or responded to." (Id.).

Also on December 8, 2015, Stephens's attorneys sent a letter "request[ing] that each Plan Administrator explain fully their justification for concluding that [Stephens's] severance benefit was equivalent" to one week of base pay per year and "request[ing] all documents relating to this conclusion." (Id. at ¶ 18). "This request was not addressed or responded to." (Id.).

3

Later, "[b]y letter dated March 18, 2016, Stephens, through her attorneys, notified both plan administrators that Stephens had made a formal claim for benefits under the TCS Plan and the Time Inc. Plan and a formal request for Plan documents." (Id. at ¶ 19). That letter noted that the previous letter was never responded to and that the statutory deadline to provide the requested documents had passed. (Id.). In response, the Vice President and Deputy General Counsel for Time sent an email and "enclosed as attachments the plan document for the TCS Plan and the plan document for the Time Severance Plan." (Id. at ¶ 20). The letter also enclosed, among other things, the "portion of the TCS Plan [Summary Plan Description] that dealt with claims procedures." (Id.). Then, on March 29, 2016, "Lescaille sent by email to Stephens'[s] counsel a so called fully executed agreement and release for Stephens." (Id. at ¶ 21).

After "Stephens [] exhausted her administrative remedies" (Id. at ¶ 22), she filed her three-Count Complaint in this Court on June 6, 2017, against the TCS Plan and Lescaille as Plan Administrator for the TCS Plan. (Doc. # 1). The Complaint asserts claims under ERISA §§ 502(a)(1)(B), 502(a)(3), and 502(c)(1), as codified in 29 U.S.C. § 1132, for denial of benefits, breach of fiduciary duty, and failure

4

to respond to document requests. (Id.). Defendants filed their Motion to Dismiss on August 1, 2017. (Doc. # 8). Stephens responded on August 14, 2017. (Doc. # 10). The Motion is ripe for review.

## II. **Legal Standard**

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990)("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). However,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true

a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

Furthermore, "[t]he scope of review must be limited to the four corners of the complaint." St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002). There is "an exception, however, in cases in which a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007). "In this context, 'undisputed' means that the authenticity of the document is not challenged." Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005)(internal citation omitted). A consideration in determining whether a document is central to a plaintiff's claim is "whether the plaintiff would have had to offer the document in order to prove its case." Fin. Sec. Assur., Inc., 500 F.3d at 1285.

### III. **Analysis**

As a preliminary matter, the Court notes that Defendants have attached copies of the termination letter, general release, and an excerpt of the TCS Plan to their Motion. (Doc. ## 8-1, 8-2). Defendants assert the Court may consider these documents without converting the Motion to a motion for

summary judgment because "Plaintiff refers to them in her Complaint and they are central to her claims." (Doc. # 8 at 4 n. 2-3). Defendants are correct that all the documents are referenced in the Complaint. But Stephens insists that the general release is not central to her claims because she "does not have to offer a copy of the release to prevail." (Doc. # 10 at 5). The Court disagrees. The Complaint states Stephens's eligibility for severance payments and benefits was contingent upon signing the release, which Stephens did. (Doc. # 1 at ¶ 14). Thus, to show that she was eligible for benefits, Stephens would need to produce the release she alleges she signed. Therefore, the Court finds that all the documents, including the release, are central to Stephens's claims. The Court may consider these documents in its analysis without converting the Motion to a motion for summary judgment.

Now, the Court will analyze Defendants' arguments in turn.

**A.  Count I**

Defendants argue Count I, under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), "should be dismissed because [Stephens] has released and waived" her claim for additional benefits under the Severance Plan. (Doc. # 8 at 2).

7

Specifically, they argue Stephens "released any claim that she is entitled to a different level of benefits than those specified in" the termination letter agreement when she signed a release. (Id. at 8).

Release and waiver are affirmative defenses. Fed. R. Civ. P. 8(c)(1). As such, Count I can only be dismissed if it is clear on the face of the Complaint that Stephens waived or released her claim for additional severance benefits. See LeFrere v. Ouezada, 582 F.3d 1260, 1263 (11th Cir. 2009)("If the complaint contains a claim that is facially subject to an affirmative defense, that claim may be dismissed under Rule 12(b)(6).").

Defendants emphasize that the termination letter stated Stephens would receive 17.97 weeks of base pay, or $34,693.65, in severance benefits, which is one week of base pay per year of Stephens's employment. (Doc. # 8 at 8; Doc. # 8-2 at 2-3). That letter also advised that eligibility to receive those benefits was dependent on signing a release. (Doc. # 8-2 at 5). That release stated that, by signing, Stephens was releasing:

> any and all claims, whether known or unknown, which Releasors ever had or may now have against any of the Time Inc. Entities and Persons arising out of [her] employment, the terms and conditions of such employment, and/or the termination or separation of

8

> [her] employment, including but not limited to . .
> . (ii) any claims under the Employmnet Retirement
> Income Security Act of 1974 (except as set forth
> below)

(Doc. # 8-2 at 8). The exceptions to the release include, among others, "claims to enforce the Agreement" and any "rights to accrued, vested benefits under any qualified or non-qualified employee benefit plan of the Company or its parent companies or subsidiaries (in accordance with the terms of the official plan documents and applicable law)." (Id. at 9).

Defendants argue the vested benefits exception does not apply to Stephens's claim because Stephens "seeks severance benefits under the TCS [] Plan which did not vest until all conditions precedent to the receipt of such benefits, including the requirement that [Stephens] execute the [release], were met." (Doc. # 8 at 8 at n.7). Thus, according to Defendants, "the first moment [Stephens] became entitled to any benefits under the TCS [] Plan, and thus any such benefits could be considered 'accrued' or 'vested,' was when she executed the [release] and waived her right to assert a claim for any further severance benefits." (Id.).

In response, Stephens argues that, even if the release attached to the Motion is considered, the applicability of

9

the affirmative defense of release is not clear on the face of the Complaint. (Doc. # 10 at 4-5). She asserts that Defendants have not made a sufficient showing that the release is valid and stresses that "[t]he severance program promised by the letter in reality consisted of a jumbled assortment of writings that was hardly a model of clarity." (Id. at 2, 4-5).

The Court agrees with Stephens. Although the release may ultimately be found valid, the Court is unable to make that determination at this time. Defendants have focused on the release's existence, but they have not addressed its validity or the circumstances surrounding its signing. And the Complaint plausibly implies Stephens was confused because the termination letter referenced the Time Inc. Plan, rather than the TCS Plan, as determining the amount of her severance benefits. (Doc. # 1 at 3; Doc. # 10 at 2). Therefore, the Court cannot determine at this time whether the release was knowingly and voluntarily executed by Stephens. See Bacon v. Stiefel Labs., Inc., No. 09-21871-CV-KLNG, 2011 WL 4944122, at *4 (S.D. Fla. Oct. 17, 2011)(noting that "the knowing and voluntary standard based on the totality of the circumstances applies to releases of ERISA claims" and that the Eleventh Circuit applies a six-factor test in determining whether a

10

release of federal statutory claims was knowing and voluntary).

Without providing any analysis as to the validity of the release, Defendants have not established that Stephens's claim for benefits is barred. At this juncture, Count I for additional severance benefits survives. Defendants may still raise their release argument at the summary judgment stage or trial.

    **B.**    <u>**Counts II and III**</u>

Defendants argue Counts II and III, based on Defendants' failure to respond to Stephens' requests for information and documents, should be dismissed because: (1) Stephens "has no standing as a 'participant' under ERISA"; (2) she "is not eligible for equitable relief under ERISA § 502(a)(3) because she has a cause of action under a separate ERISA enforcement provision"; and (3) she "failed to exhaust her administrative remedies under the Plan with respect to such claims as required." (Doc. # 8 at 2).

    **i.**    <u>**Equitable Relief Is Not Precluded**</u>

In Count II, Stephens asserts a claim for equitable relief for breach of fiduciary duty under ERISA § 502(a)(3). Defendants allegedly breached their fiduciary duty by failing to timely provide requested documents and information —

similar allegations underlie Count III, which is brought under ERISA §§ 502(a)(3) and 502(c)(1). (Doc. # 1 at 6-7).

"The United States Supreme Court has stated that section 502(a)(3) of ERISA is a '"catchall" provision[]' that 'act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that [section] 502 does not elsewhere adequately remedy.'" Gilmore v. Am. Basketball Ass'n Players' Ret. Plan, No. 3:15-cv-337-J-JRK, 2015 WL 12806538, at *8 (M.D. Fla. Nov. 19, 2015)(quoting Varity Corp. v. Howe, 516 U.S. 489, 512 (1996)). Thus, "[i]n determining whether a plaintiff has stated a claim under section 502(a)(3), the 'relevant concern' is whether the plaintiff 'also had a cause of action, based on the same allegations, under Section 502(a)(1)(B) *or ERISA's other more specific remedial provisions.*'" Brown v. Validata Computer & Research Corp., No. 2:12CV775-SRW, 2013 WL 3422477, at *4 (M.D. Ala. July 8, 2013)(quoting Jones v. American General Life and Accident Ins. Co., 370 F.3d 1065, 1073 (11th Cir.), rehearing and suggestion for rehearing en Banc den., 116 F. App'x 254 (2004)).

A claim under § 502(a)(3) is barred if another provision of § 502 provides an adequate remedy. So, the Court must determine "whether the allegations supporting the Section

502(a)(3) claim [are] also sufficient to state a cause of action" under another of ERISA's more specific remedial provisions. Jones, 370 F.3d at 1073. "Notwithstanding this rule, one may still plead an equitable claim in the alternative, particularly at the pleading stage, based on allegations for which [another ERISA provision] does not provide an adequate remedy." Gilmore, 2015 WL 12806538, at *8.

Defendants argue that Count II should be dismissed because the remedy available under ERISA § 502(c)(1), which Stephens is pursuing in Count III, provides sufficient relief for the failure to provide documents alleged in Count II. (Doc. # 8 at 12-13). ERISA § 502(a)(1)(A) allows a participant or beneficiary to bring a civil action for the relief provided for in § 502(c)(1). 29 U.S.C. § 1132(a)(1)(A). And § 502(c)(1) provides for a $100 per day penalty for a plan administrator "who fails or refuses to comply with a request for any information which such administrator is required by [ERISA's protection of employee benefits provisions] to furnish to a participant or beneficiary" within 30 days. 29 U.S.C. § 1132(c)(1)(B). Because the basis for a § 502(c)(1) claim is the failure to provide information or documents ERISA requires be provided, Defendants reason a claim under the §

13

502(a)(3) catchall for failure to provide documents and information is precluded. Cf. Brown, 2013 WL 3422477, at *4-5 (dismissing breach of fiduciary duty claim based on failure to provide documents as barred by ERISA § 502(a)(1)(A) claim for violation of § 104(b)(4)).

But Stephens argues she requested information and documents from Defendants that are not covered by ERISA § 104(b)(4), a provision that specifies certain items a plan administrator must disclose upon request and that may be enforced through ERISA § 502(c)(1). (Doc. # 10 at 8-9). Count II is based on the Plan Administrator's failure to provide "information as to the calculation of [Stephens's] benefits", the "justification for the conclusion that [Stephens] was entitled to benefits equivalent to 17.97 weeks of pay," "benefits booklets for the TCS Plan," and "for correspondence related to Stephens'[s] claim for benefits." (Doc. # 1 at ¶ 26). In contrast, ERISA § 104(b)(4) only requires a plan administrator to "furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). Thus, Stephens argues: "Because it applies only to a limited range

14

of documents, ERISA § 104(b)(4) does not provide an adequate remedy to Stephens who has requested information not available under that section." (Doc. # 10 at 8).

And Defendants have not pointed out another remedial provision of ERISA that would require providing the specific information referenced in Count II. Nor have Defendants argued that a breach of fiduciary duty claim under § 502(a)(3) cannot be predicated upon a failure to provide information that is not explicitly required to be provided by another provision of ERISA. Therefore, Defendants have not shown that Count II is based upon requested information that another specific remedial provision of ERISA required the Plan Administrator to provide, or that it otherwise fails to state a claim. As such, Count II survives the motion to dismiss stage.

### ii. Stephens has Standing as a Participant

ERISA § 502(a)(3) provides that a "participant" or "beneficiary" may bring a civil action for equitable relief to redress violations of or to enforce any provisions of the ERISA subchapter or the terms of the plan at issue. 29 U.S.C. § 1132(a)(3). Similarly, ERISA § 502(c)(1) provides for daily penalties for a plan administrator "who fails or refuses to comply with a request for any information which such

15

administrator is required by this subchapter to furnish to a *participant or beneficiary*." 29 U.S.C. § 1132(c)(1)(B)(emphasis added). Thus, to have standing to bring such claims for breach of fiduciary duty and failure to provide information, "the plaintiff must be a participant or beneficiary at the time the information is requested" and "at the time the action is commenced." Estate of Prince v. Aetna Life Ins. Co., No. 8:08-cv-468-T-24TGW, 2008 WL 4327049, at *2 (M.D. Fla. Sept. 18, 2008).

> ERISA defines a "participant" as
>
> any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C.A. § 1002(7). Furthermore, "[t]he Supreme Court has found that 'participant' in the context of ERISA" includes "'former employees who have a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits.'" Winchester v. Pension Comm. of Michael Reese Health Plan, Inc. Pension Plan, 942 F.2d 1190, 1192–93 (7th Cir. 1991)(quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117 (1989)).

16

Defendants argue Counts II and III, brought under ERISA §§ 502(a)(3) and 502(c)(1), should be dismissed with prejudice because Stephens was not a "participant" under ERISA, and thus lacks standing. (Doc. # 8 at 9-11). They insist that "it was clear [Stephens] had no further right to any benefits from the TCS [] Plan" and had "no colorable ability to claim further benefits from the Plan because she had expressly released and waived any such right." (Id. at 10). "Therefore, [Stephens] was not a participant in the TCS [] Plan at the time she made her request for information from the Plan Administrator on December 8, 2015, and she had no right under ERISA to the information requested." (Id.).

But the Complaint alleges "Stephens is a participant in the TCS Plan." (Doc. # 1 at ¶ 11). Stephens felt she was not paid the full benefits she was owed under the TCS Plan because the termination letter referenced a separate plan, the Time Inc. Plan, under which employees are entitled to two weeks of pay per year of service. (Id. at ¶¶ 14-16). She then made requests for information through her formal claim for benefits under either the TCS Plan or the Time Inc. Plan, as well as through a separate letter requesting information. (Id. at ¶¶ 17-19). Stephens insists that, "[b]ecause [she] did not get her full benefits under the TCS Plan at the time

17

she filed suit, she was and remains a participant in the TCS Plan for ERISA purposes." (Doc. # 10 at 6-7).

At this juncture, the Court agrees these allegations are sufficient to show Stephens has standing to pursue her claims. Stephens alleges she is a participant in the TCS Plan and plausibly pled that she was not paid the full benefits offered to her through the Plan. Therefore, Counts II and III survive.

### iii. **Stephens Has Exhausted her Administrative Remedies**

Defendants also argue Stephens has failed to exhaust her administrative remedies for her breach of fiduciary duty and request for documents claims. (Doc. # 8 at 13-14). Defendants assert that Stephens "did not even initiate, much less exhaust, the administrative claims procedure in the TCS Severance Plan, nor has she alleged that such exhaustion would be futile." (Id. at 14). But it is not clear that Stephens failed to exhaust her administrative remedies. Indeed, the Complaint states "Stephens has exhausted her administrative remedies." (Doc. # 1 at ¶ 22). The exhibits to the Motion do not contradict this assertion. For the motion to dismiss stage, this allegation is sufficient and Counts II and III survive.

Accordingly, it is now

18

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Defendants Time Customer Service, Inc., Severance Plan and Henry Lescaille's Motion to Dismiss (Doc. # 8) is **DENIED**.

(2) Defendants' answers to the Complaint are due **September 5, 2017.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 22nd day of August, 2017.

*Virginia M. Hernandez Covington*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE