```
UNITED STATES DISTRICT COURT
   MIDDLE DISTRICT OF FLORIDA
         TAMPA DIVISION
```

NINA STEPHENS,

    Plaintiff,

v.                                Case No. 8:17-cv-1338-T-33AEP

TIME CUSTOMER SERVICE, INC.,
SEVERANCE PLAN and HENRY
LESCAILLE, as Plan
Administrator,

    Defendants.
_____/

## **ORDER**

This matter comes before the Court pursuant to Plaintiff and Counterclaim-Defendant Nina Stephens's Motion to Dismiss Counterclaim (Doc. # 26), filed on September 24, 2017. Defendants and Counterclaim-Plaintiffs Time Customer Service, Inc. Severance Plan ("TCS Plan") and Henry Lescaille responded on October 10, 2017. (Doc. # 29). For the reasons that follow, the Motion is granted in part as set forth herein.

### I.   **Background**

The following facts are taken from the TCS Plan and Lescaille's Counterclaim. On September 3, 2015, Time, Inc. and Stephens "entered into a contractual written Separation

Agreement and General Release." (Doc. # 22 at 14). "The Agreement explained that Time Customer Service, Inc. was establishing a severance program in accordance with the terms of the Plan, and that [Stephens] would be eligible for $34,693.65 in severance benefits under the terms of the severance program." (Id.). But, "as a condition precedent to receiving such benefits," Stephens had to sign and return the termination letter Agreement and attached release. (Id.).

Stephens signed and returned both the termination letter and release. (Id. at 14-15). The termination letter stated, in relevant part:

> You acknowledge and agree that the payment(s) and/or benefit(s) provided to you and/or on your behalf under the Severance Plan and pursuant to this Agreement are in full discharge of any and all liabilities and obligations of the Company to you, monetarily or with respect to employee benefits or otherwise, including but not limited to any and all obligations arising under any alleged written or oral agreement, policy plan or procedure of the Company and/or any alleged understanding or arrangement between you and the Company. You further agree that other than what you will receive under this Agreement and the Severance Plan, you have received all compensation, benefits, notice and leave to which you were entitled in connection with your employment and separation from employment with the Company. In the event you breach any of the terms of this Agreement, you acknowledge and agree that you shall forfeit any remaining amounts due to you under this Agreement, and the Company may seek all available relief under law or in equity, including, but not limited to, recoupment of amounts paid to you pursuant to this Agreement.

(Doc. # 22-1 at 4).

Among other things, the release provided that:

> this General Release is intended to and shall release the Time Inc. Entities and Persons from any and all claims, whether known or unknown, which Releasors ever had or may now have against any of the Time Inc. Entities and Persons arising out of my employment, the terms and conditions of such employment, and/or the termination or separation of my employment, including but not limited to . . . (ii) any claims under the Employee Retirement Income Security Act of 1974 . . .

(Id. at 8).

"The Plan is an employee benefit plan sponsored by Time Customer Service, Inc., a subsidiary and affiliated entity of Time Inc., one of the 'Time Inc. Entities and Persons' as defined by the Agreement, and therefore a third-party beneficiary under the Agreement." (Id. at 16). And "Lescaille is an employee of Time Inc., the named fiduciary of the Plan, one of the 'Time Inc. Entities and Persons' as defined in the Agreement, and therefore a third-party beneficiary under the Agreement." (Id.). The TCS Plan and Lescaille "have performed all conditions, covenants and promises required by them to be performed in accordance with the terms and conditions of the Agreement, including payment to [Stephens] of $34,693.65 in severance pay." (Id. at 17). According to the TCS Plan and Lescaille, "[b]y asserting her [ERISA] claims against [them]

3

in this action, [Stephens] has breached and continued to breach the Agreement and the General Release." (Id.).

Stephens filed her three-Count Complaint in this Court on June 6, 2017, against the TCS Plan and Lescaille as Plan Administrator for the TCS Plan. (Doc. # 1). The Complaint asserts claims under ERISA §§ 502(a)(1)(B), 502(a)(3), and 502(c)(1), as codified in 29 U.S.C. § 1132, for denial of benefits, breach of fiduciary duty, and failure to respond to document requests. (Id.). The TCS Plan and Lescaille filed their Motion to Dismiss on August 1, 2017, (Doc. # 8), which the Court denied on August 22, 2017. (Doc. # 15).

Then, on September 5, 2017, the TCS Plan and Lescaille filed their Amended Answer and Counterclaims. (Doc. # 22). The TCS Plan and Lescaille, as Counterclaim-Plaintiffs, assert four counterclaims against Stephens: Count I is for breach of contract; Count II is for specific performance; Count III is for declaratory relief, seeking a declaration that the release agreement is binding on Stephens; and Count IV for equitable restitution pursuant to § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). Stephens now moves to dismiss the counterclaims, arguing that Count I and II are preempted by ERISA and the Court lacks jurisdiction over Counts III and

IV. (Doc. # 26). The TCS Plan and Lescaille have responded, (Doc. # 29), and the Motion is ripe for review.

## II. **Legal Standard**

A motion to dismiss a counterclaim under Rule 12(b)(6) of the Federal Rules of Civil Procedure is evaluated in the same manner as a motion to dismiss a complaint. Stewart Title Guar. Co. v. Title Dynamics, Inc., No. 2:04-cv-316-FtM-33SPC, 2005 WL 2548419, at *1 (M.D. Fla. Oct. 11, 2005). A counterclaim must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all factual allegations in the counterclaim as true and construe them in the light most favorable to the counterclaim plaintiff. See United Techs. Corp. v. Mazer, 556 F.3d 1260, 1269 (11th Cir. 2009).

"While a [counterclaim] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations and quotations marks

5

omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." Id. (internal citations omitted).

A counterclaim plaintiff must plead enough facts to state a plausible basis for the claim. Id.; James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008)("To survive dismissal, the [counterclaim's] allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's [counterclaim] should be dismissed."). Additionally, "the tenet that a court must accept as true all of the allegations contained in a [counterclaim] is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**III. Analysis**

    **A.    Supplemental Jurisdiction**

Stephens first requests that the Court decline to exercise supplemental jurisdiction over the Counterclaim. She does not identify over which specific counterclaims she believes the Court should not exercise its supplemental

jurisdiction. (Doc. # 26 at 3-4). But she notes that the "Counterclaim is based on allegations that Stephens breached an agreement" and is thus "a state law based claim that can require a jury trial." (Id.). Therefore, it appears Stephens is addressing only Count I for breach of contract and Count II for specific performance of a contract. According to Stephens, because jury trials are not permitted under ERISA, these two state law claims "threaten[] to disrupt what is a straightforward ERISA case." (Id. at 4).

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Pursuant to 28 U.S.C. § 1367(c), a district court has discretion to decline supplemental jurisdiction under four circumstances:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or

7

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C.A. § 1367(c).

The Court agrees with the TCS Plan and Lescaille that "[n]one of these circumstances are present here." (Doc. # 29 at 14). Stephens's ERISA claims have not been dismissed. Neither party alleges the counterclaims raise novel or complex issues of state law or that the breach of contract or specific performance counterclaims predominate over Stephens's ERISA claims. And the Court does not consider Stephens's concern over a potential jury trial of these claims an exceptional circumstance that warrants declining jurisdiction. Therefore, the Court determines that the exercise of supplemental jurisdiction over the claims is proper.

**B.   ERISA Preemption**

Next, Stephens argues that Count I, for breach of contract, and Count II, for specific performance of that contract, are preempted by ERISA. ERISA provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a).

"Complete or 'super preemption' exists where a plaintiff seeks relief that is available under 29 U.S.C. § 1132(a), the civil enforcement provisions of ERISA." Johnson v. Unum Provident, 363 F. App'x 1, 3 (11th Cir. 2009)(citing Whitt v. Sherman Int'l Corp., 147 F.3d 1325, 1330 (11th Cir. 1998)). "There is complete preemption when four elements are satisfied." Id. "First, there must be a relevant ERISA plan. Second, the plaintiff must have standing to sue under that plan. Third, the defendant must be an ERISA entity. Finally, the complaint must seek compensatory relief akin to that available under § 1132(a)." Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1212 (11th Cir. 1999)(citations omitted). "[F]ederal courts have subject-matter jurisdiction over state-law claims that have been superpreempted." Id.

"Even if a claim is not subject to super preemption, it may be subject to 'defensive preemption.'" Johnson, 363 F. App'x at 3. "It does not confer federal subject-matter jurisdiction over the claim, but defensive preemption provides an affirmative defense that requires a federal court to dismiss the preempted state-law claim." Id. Defensive preemption arises when claims "seek relief under state-law causes of action that 'relate to' an ERISA plan." Butero, 174 F.3d at 1215 (citation omitted). "A party's state law claim

9

'relates to' an ERISA benefit plan for purposes of ERISA preemption whenever the alleged conduct at issue is intertwined with the refusal to pay benefits." Garren v. John Hancock Mut. Life Ins. Co., 114 F.3d 186, 187 (11th Cir. 1997); see also Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47 (1987)(noting "the expansive sweep of the pre-emption clause" and that "[t]he phrase 'relate to' was given its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" (internal citation and quotation marks omitted)).

Stephens is unclear as to whether she contends Count I and II are completely or defensively preempted. But Stephens argues the claims should be dismissed as preempted by ERISA because the termination letter Agreement and release relate to the TCS Plan. (Doc. # 26 at 4-5). Because defensive preemption concerns the dismissal of claims while complete preemption involves the recharacterizing of state claims as ERISA claims under § 1132(a), the Court interprets Stephens's Motion as arguing for defensive preemption. See Ervast v. Flexible Prod. Co., 346 F.3d 1007, 1014 (11th Cir. 2003)("The defensive preemption issue . . . is substantive; therefore, either in state or federal court, when a state law claim is

10

brought, the defendant may raise the defense that the claims are preempted by ERISA under § 1144, and should be dismissed. Super preemption, on the other hand, *recharacterizes* the state law claim into a federal claim under § 1132, so long as the other three Butero elements are present.").

According to Stephens, "[t]he Termination Letter and the Release are not only related to the Plan, they are integral to the Plan" because they "set the terms for eligibility to participate in the Plan." (Id. at 5). In fact, the termination letter provides: "In exchange for entering into this Agreement and signing the Release, and subject to other terms and conditions of the Severance Plan, you will receive benefits under the Severance Plan . . . ." (Doc. # 22-1 at 2). Therefore, Stephens argues Count I "is based on the TCS Plan and requires the Court to interpret that plan." (Doc. # 26 at 5). In contrast, the TCS Plan and Lescaille insist that both Counts I and II "do not require reference to or interpretation of an ERISA plan and are not preempted by the statute." (Doc. # 29 at 11).

The Court agrees with Stephens that the termination letter and release "relate to" the TCS Plan because Stephens's receipt of the benefits under the Plan, as outlined in the termination letter, were contingent upon her signing that

letter and release. Cf. Vesely v. Cont'l Cas. Co., 101 F. Supp. 2d 1054, 1056 (N.D. Ill. 2000)("[T]he document's title, as well as its contents, clearly demonstrates that the Release is an integral component of the ERISA plan. The only way a Continental employee fired in a RIF can obtain the enhanced 52-week benefits is to sign the Release. Obviously, the Release 'relates to' Continental's benefit plan."). The letter purported to provide a calculation of the severance pay to which Stephens was entitled under the Plan — an incorrect calculation, in Stephens's eyes — and, therefore, interpretation of the letter requires reference to the TCS Plan. Because the breach of contract claim relates to an ERISA-governed plan, Count I is defensively preempted and is dismissed. And, because Count II for specific performance of the Agreement similarly relates to the TCS Plan, Count II is also dismissed as defensively preempted.

### C. Subject Matter Jurisdiction

Stephens also argues that Counts III and IV should be dismissed because the Court lacks jurisdiction to adjudicate them. The Court will address each count in turn.

#### 1. Count III for Declaratory Relief

In Count III, the TCS Plan and Lescaille seek a declaratory judgment that the "Agreement is binding on"

Stephens, as well as a "declaration of their rights and duties under the Agreement, and the rights and duties of [Stephens], including a determination that [Stephens] is bound by the Agreement." (Doc. # 22 at 20). They also seek "an order specifically enforcing the Agreement and dismissing with prejudice, or requiring [Stephens] to dismiss with prejudice her claims." (Id.). But the TCS Plan and Lescaille do not state under what law they are seeking this relief.

Stephens notes that the "Declaratory Judgment Act does not expand the jurisdiction of the federal courts" and that a separate "basis for subject matter jurisdiction must be found." (Doc. # 26 at 6). Despite that reference to the Declaratory Judgment Act, Stephens argues that Count III is seeking a declaration under a section of ERISA that does not allow for such relief for plans and plan administrators. (Id. at 6-7). Indeed, the Eleventh Circuit has held that declaratory judgments are unavailable to plans and plan administrators under § 1132(a)(3)(B) of ERISA. See Gulf Life Ins. Co. v. Arnold, 809 F.2d 1520, 1523 (11th Cir. 1987)(holding that an ERISA fiduciary could not maintain a declaratory judgment action under § 1132(a)(3)(B) because "the suit was not one for 'equitable relief'; nor was it an action 'to enforce' the plan").

13

But the TCS Plan and Lescaille emphasize that "Count III of the Counterclaim clearly asks for a declaration of the parties' rights *under the terms of the Severance Agreement*, a contract." (Doc. # 29 at 9)(emphasis original). They insist this count is not brought under ERISA. (Id. at 10). Rather, they characterize Count III as seeking a declaration regarding an independent contract — the termination letter Agreement and release. (Id. at 9-10).

There are other legal bases under which they may seek a declaratory judgment. Although a declaratory judgment under ERISA is unavailable, the TCS Plan and Lescaille may be able to plead a claim under the Declaratory Judgment Act. True, the Declaratory Judgment Act itself does not provide federal subject matter jurisdiction. See Stuart Weitzman, LLC v. Microcomputer Res., Inc., 542 F.3d 859, 861-62 (11th Cir. 2008)("[I]t is well established that the Declaratory Judgment Act does not, of itself, confer jurisdiction upon federal courts."). But federal subject matter jurisdiction exists if the declaratory judgment is predicated upon a potential or pending federal claim by the declaratory judgment defendant — such as the ERISA claims raised by Stephens. See Prudential Ins. Co. of Am. v. Doe, 76 F.3d 206, 210 (8th Cir. 1996)("[Defendant plan participant] may be correct that

nothing in ERISA specifically grants a fiduciary the authority to file a declaratory judgment action to interpret a policy. Nonetheless, the Declaratory Judgment Act, 28 U.S.C. § 2201, provides jurisdiction. As determined above, [Defendant] could have asserted [an ERISA] claim in federal court." (citations omitted)). But, because Count III is unclear regarding whether it is brought under the Declaratory Judgment Act, the Court dismisses Count III with leave to amend by November 3, 2017.

### 2. Count IV for Restitution under Section 502(a)(3) of ERISA

For Count IV for restitution of the severance benefits that were paid to Stephens, Stephens argues this counterclaim should be "dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)" because the Court "lacks the statutory or constitutional power to adjudicate it." (Doc. # 26 at 8). According to Stephens, the Court lacks subject matter jurisdiction because reimbursement actions under ERISA § 502(a)(3), codified as 29 U.S.C. § 1132(a)(3), are "limited to only such relief as will enforce 'the terms of the plan' or the statute." (Id. at 9). But Stephens insists "Defendants do not allege that the Plan authorizes reimbursement suits" and, in fact, "the Plan does not contain a reimbursement

provision." (Id.). Additionally, Stephens argues the TCS Plan and Lescaille are seeking an impermissible legal remedy — trying to recover money from Stephens's general assets — because they "do not point to any TCS Plan provisions that authorize[] the Plan to reach a specifically identifiable fund." (Id.).

Stephens is correct that only equitable relief is permitted under § 1132(a)(3) to enforce provisions of a plan. See 29 U.S.C. § 1132(a)(3) (providing that a participant, beneficiary, or fiduciary may seek either an injunction or "other appropriate equitable relief" in order "to redress such violations" or "to enforce any provisions of this subchapter or the terms of the plan"). She is also correct that restitution is sometimes a legal remedy, rather than an equitable one. See Great-W. Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 215 (2002)("[W]hether [restitution] is legal or equitable in a particular case (and hence whether it is authorized by § 502(a)(3)) remains dependent on the nature of the relief sought."). The Supreme Court has held that "when a plan seeks restitution from a beneficiary who is in possession of particular, identifiable funds, such a suit sounds in equity and is cognizable under § 502(a)(3)." Admin. Comm. for Wal-Mart Stores, Inc. Assocs.' Health & Welfare

Plan v. Horton, 513 F.3d 1223, 1226-27 (11th Cir. 2008)(citing Sereboff v. Mid Atl. Med. Servs., Inc., 126 S. Ct. 1869, 1874-77 (2006)). Thus, "a claim for restitution, in order to constitute a claim for equitable relief, must seek specifically identifiable property that is within the control or possession of the beneficiary." Eldridge v. Wachovia Corp. Long-Term Disability Plan, 383 F. Supp. 2d 1367, 1372 (N.D. Ga. 2005).

The TCS Plan and Lescaille argue that they have pled Count IV in the alternative, lest Count I for breach of contract be preempted by ERISA. (Doc. # 29 at 16). In Count IV, the TCS Plan and Lescaille treat the termination letter Agreement and release signed by Stephens as part of the TCS Plan's terms. According to them, if the Agreement and release are part of the TCS Plan, then seeking restitution based on Stephens's alleged violation of the release would be an action to enforce the terms of the TCS Plan. (Id. at 17). And the letter Agreement included a term that Stephens would forfeit any remaining amounts due to her under the Agreement if she breached its terms. (Doc. # 22-1 at 4). The Agreement also stated "the Company may seek all available relief under law or in equity, including, but not limited to, recoupment of amounts paid to [Stephens] pursuant to this Agreement."

17

(Id.). The TCS Plan and Lescaille note Stephens's own assertion — that the termination letter and release "are integral to the Plan" — as support for their decision to plead Count IV under the alternative theory that the termination letter Agreement and release are part of the TCS Plan. (Doc. # 26 at 5).

The Court has not determined — and need not determine, at this stage — whether the termination letter Agreement and release qualify as terms of the TCS Plan. The Court has merely determined that the breach of contract and specific performance claims "relate to" the TCS Plan and are thus preempted under ERISA's broad preemption provision. So, the TCS Plan and Lescaille may seek to enforce the Agreement through § 1132(a)(3) under the theory that the letter Agreement and release are part of the TCS Plan's terms.

The Court next analyzes whether the TCS Plan and Lescaille have sufficiently pled this claim as one for equitable relief — a requirement for § 1132(a)(3) claims to survive. Here, the TCS Plan and Lescaille ague they have identified specific funds — the $34,693.65 that was paid to Stephens pursuant to the TCS Plan — for which they seek restitution. (Doc. # 29 at 18-19). But, at one point, Count IV requests "compensatory damages . . . in the amount of

18

$34,693.65," rather than restitution of the specific funds paid to Stephens. (Doc. # 22 at 23). The Counterclaim does not explicitly specify that the TCS Plan and Lescaille wish to recoup only the funds paid to Stephens and only through traditional equitable means.

In their response, the TCS Plan and Lescaille request leave to amend in order to plead "a claim for equitable restitution under ERISA seeking a constructive trust or equitable lien be imposed upon the portion of the specific and identifiable severance payment fund in Stephens's possession." (Doc. # 29 at 19). So that they may clarify the form of relief sought, the Court dismisses Count IV with leave to amend by November 3, 2017.

## IV. <u>Conclusion</u>

Therefore, the Motion is granted in part. Because they relate to the TCS Plan, Counts I and II are dismissed as preempted by ERISA. Counts III and IV are dismissed with leave to amend by November 3, 2017.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Plaintiff and Counterclaim-Defendant Nina Stephens's Motion to Dismiss Counterclaim (Doc. # 26) is **GRANTED IN PART.**

(2) Counts I and II of the Counterclaim are **DISMISSED** as preempted by ERISA.

(3) Counts III and IV are **DISMISSED** with leave to amend by **November 3, 2017.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 24th day of October, 2017.

*[signature]*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE