IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| NINA STEPHENS, as individual, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 8:17-CV-01338-VMC-AEP |
| | ) |
| TIME CUSTOMER SERVICE, INC. SEVERANCE PLAN, and HENRY LESCAILLE, as Plan Administrator, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS/COUNTERCLAIM PLAINTIFFS' RESPONSE IN OPPOSITION TO PLAINTIFF'S/COUNTERCLAIM DEFENDANT'S MOTION TO DISMISS AMENDED COUNTERCLAIM**

Defendants Time Customer Service, Inc. Severance Plan (the "TCS Severance Plan") and Henry Lescaille, as Plan Administrator for the Plan ("Mr. Lescaille") (collectively "Defendants" or "Counterclaim Plaintiffs"), hereby submit their Response in Opposition to Plaintiff Nina Stephens' ("Stephens" or "Plaintiff" or "Counterclaim Defendant") Motion to Dismiss First Amended Counterclaim (the "Motion").

**I.      INTRODUCTION**

Stephens' Motion must be rejected. Indeed, the vast majority of the arguments raised in the Motion are obviously without merit as they are contrary to decisions already rendered by this Court in its October 24, 2017 Order. First, Stephens' assertion that there is no pending or potential federal action to serve as the basis for Count I of the Counterclaim is belied by the Court's earlier ruling that Counterclaim Plaintiffs can bring a Declaratory Judgment Action predicated upon Stephens' pending ERISA claims. (*See*

Dkt. # 31 at 14 ("[F]ederal subject matter jurisdiction exists if the declaratory judgment is predicated upon a potential or pending federal claim by the declaratory judgment defendant—*such as the ERISA claims raised by Stephens.*") (emphasis added).) Second, Stephens' assertions that the various provisions identified by Counterclaim Plaintiffs are not terms of the Plan or that Counterclaim Plaintiffs have no standing to bring a claim for equitable restitution are defeated by this Court's prior ruling that Counterclaim Plaintiffs "may seek to enforce the Agreement through § 1132(a)(3) under the theory that the letter Agreement and release are part of the TCS Plan's terms." (*See id.* at 18 (further noting that, at the motion to dismiss stage, the Court need not determine what specific documents qualify as terms of the TCS Plan).)

Stephens' remaining argument—that the Release Agreement she signed does not reach the claims she has brought in this litigation—goes to the merits of the counterclaims and is not a valid basis to dismiss the counterclaims at the pleading stage. At this stage in the proceedings, Counterclaim Plaintiffs' well pled allegations must be accepted as true and viewed in the light most favorable to them. In this posture, it is clear that the Amended Counterclaim plausibly suggest a right to relief above the speculative level and Stephens' Motion to Dismiss the Amended Counterclaim must be denied. Further, Plaintiff's argument is factually incorrect and undercut by her own pleadings.

## II. THE AMENDED COUNTERCLAIM ADEQUATELY ALLEGES A CLAIM FOR DECLARATORY JUDGMENT AND EQUITABLE RELIEF UNDER ERISA

### A. The Amended Counterclaim Adequately States a Declaratory Judgment Claim.

Contrary to Stephens' assertion, there are pending federal claims to serve as the

predicate for Counterclaim Plaintiffs' Declaratory Judgment Action in Count I of the Amended Counterclaim: her own claims under ERISA. (*See* Dkt. # 37 at ¶ 26 (alleging that Stephens has brought a coercive action under ERISA)[1].) The Court has already expressly noted that these claims are sufficient to support Counterclaim Plaintiffs' action for a declaratory judgment under the Declaratory Judgment Act (*See* Dkt. # 31 at 14 ("[F]ederal subject matter jurisdiction exists if the declaratory judgment is predicated upon a potential or pending federal claim by the declaratory judgment defendant—*such as the ERISA claims raised by Stephens.*") (citing *Prudential Ins. Co. of Am. v. Doe*, 76 F.3d 206, 210 (8th Cir. 1996).) Given that the Amended Counterclaim now makes clear that Counterclaim Plaintiffs seek declaratory judgment under that Act, (*compare* Dkt. # 31 at 15 (noting that Counterclaim Plaintiffs can seek Declaratory Relief if it is clearly sought under the Declaratory Judgment Act), *with* Dkt. # 37 at ¶¶ 4, 33-40 & p. 19 (heading making clear Count I is "under the Declaratory Judgment Act")), the Amended Counterclaim adequately states a claim for declaratory judgment and Stephens' Motion to Dismiss should be denied with regard to Count I of the Amended Counterclaim.

Stephens makes an awkward argument that because "the release [Counterclaim Plaintiffs] seek to litigate is a part of the Plan," the release "is already part of this litigation" and there is somehow not a pending federal claim at issue in this case. (Dkt. # 38 at 3.) Stephens' argument makes no logical sense. The fact that the subject matter of the release may be at issue as part of both Stephens' ERISA claims as well as the

---

[1] In her Motion, Stephens claims that Counterclaim Plaintiffs "have not even attempted to make [a] showing" that there is a pending federal claim. (Dkt. # 38 at 3.) Plaintiff is simply wrong. Defendants expressly pled the existence of a pending federal claim under ERISA in their Amended Counterclaim. (*See* Dkt. # 37 at ¶ 26 (expressly identifying ERISA claim brought by Stephens).)

3

counterclaims does not change the fact that Plaintiff has filed existing ERISA claims which are squarely existing and part of this case. Plaintiff cites to no authority, nor can she, supporting her illogical argument that because there is some factual subject matter that is part of both her ERISA claims and the counterclaims her own ERISA claims must be disregarded and cannot be considered pending federal claims for purposes of assessing subject matter jurisdiction under the Declaratory Judgment Act.

### B. The Amended Counterclaim Adequately States a Claim for Equitable Relief to Enforce the terms of a Plan under ERISA § 1132(a)(3).

Stephens' assertions that Count II must be dismissed because none of the "plan terms" expressly provide a "right to recoupment" to any of the Counterclaim Plaintiffs likewise have no merit.[2] (*See* Dkt. # 38 at 5-6.) Count II of the Amended Counterclaim is a claim *under ERISA § 1132(a)(3)* seeking all available equitable relief to enforce the terms of the Plan. (Dkt. # 37 at ¶ 37.) Pursuant to this statutory provision, plan fiduciaries, like Plan Administrator Lescaille, have standing to seek "appropriate equitable relief" to "enforce any provisions of . . . the plan." 29 U.S.C. § 1132(a)(3). In Count II, Counterclaim Plaintiffs' seek "all available equitable relief," including

---

[2] Stephens includes at the outset of her Motion a "background" discussion. (*See* Dkt. # 38 at 2-3.) Virtually none of this "background" discussion has anything to do with the validity of the counterclaims. Rather, it appears that Stephens is attempting to convince the Court to have empathy for her factual position. While irrelevant to the issue of whether the counterclaims are appropriately pled, Counterclaim Plaintiffs feel compelled to note that Stephens' "background" discussion ignores seminal facts which undercut her claims, including the fact that she was specifically informed prior to signing the release that the reference to the Time Inc. Severance Plan for Regular Employees in the letter agreement she received was a typographical error and that she was not eligible for benefits under that plan because she was not a Time Inc. employee. Also, several statements in this "background" discussion are inaccurate or misleading. For example, Stephens did not become a participant in the TCS Plan "subsequently" to her signing the release, and Stephens' ERISA claim is not based on "misconduct that occurred on March 15, 2016 by TCS Plan officials," as Plaintiff is plainly asserting entitlement to additional severance benefits under her severance benefit offer conveyed via letter received "[o]n or about July 23, 2015." (*See* Dkt. # 1 (Compl.) at ¶¶ 13, 17.) Notably, Stephens includes no citation at all to pleadings or record evidence supporting these supposed "facts."

4

specifically equitable restitution, pursuant to this provision to enforce the terms of the Plan that require Plaintiff to release claims like the one asserted in this litigation as a condition precedent to receipt of severance payments. (*See* Dkt. # 37 at ¶¶ 34-40.) Thus, Counterclaim Plaintiffs' claim for equitable restitution enforcing the terms of the Plan is adequately pled as a claim under the statutory language of ERISA itself, and is not, and need not be, predicated on any express right to recoupment in any specific Plan document.[3]

Moreover, even if there were a requirement that a right to recoupment exist in the terms of the applicable Plan documents in order for Counterclaim Plaintiffs to assert their counterclaim under ERISA § 1132(a)(3) (which there is not), Counterclaim Plaintiffs have expressly identified such a right that runs to them, and Stephens' misconstrues the record when contending otherwise. Specifically, Counterclaim Plaintiffs have pled the existence of an agreement Stephens signed as a condition precedent to receiving severance benefits under the Plan which included a general release in favor of "Time Inc. Entities and Persons," which is defined to include "the Company and Time Warner Inc., and each of their respective parent entities, subsidiaries, divisions, related and affiliated entities and employee benefit plans, and all of their … fiduciaries and employees (in their official and individual capacities)…." (Dkt. # 37 at ¶ 12.) Counterclaim Plaintiffs have further pled that this agreement provides that "[e]ach of the Time Inc. Entities and

---

[3] While Counterclaim Plaintiffs have alleged that there are several places in the Plan Documents which expressly note the right to recoupment, it is 29 U.S.C. § 1132(a)(3), not these contractual provisions, that forms the basis of their claim for equitable restitution. These additional contractual provisions were pled by Counterclaim Plaintiffs in support of their assertion that the equitable remedy of an equitable lien or constructive trust by agreement is available under 29 U.S.C. § 1132(a)(3). (*See* Dkt. # 37 at ¶ 38.)

5

Persons is intended to be a third party beneficiary under this Agreement."[4] (*Id.*) And, Counterclaim Plaintiffs have pled that the same agreement includes a provision stating that that in the event of its breach the company "may seek all available relief under law or in equity, including, but not limited to, recoupment of amounts paid to [Counterclaim Defendant] pursuant to this Agreement."[5] (*Id.* at ¶ 38.) There is no question that such allegations plausibly plead a specific right to recoupment in the Plan documents running to both the Plan (as an "employee benefit plan" of a subsidiary, division, related and affiliated entity of Time Inc.) and Lescaille (as a "fiduciary" of the Plan and an "employee" of Time Inc.), and that both are expressly identified "third party beneficiar[ies] under this Agreement." (*Id.* at ¶¶ 12, 38.) Stephens' arguments to the contrary, aside from being factually incorrect, clearly run to the merits of what these documents legally mean, and not the plausibility of Counterclaim Plaintiffs' claims at the pleading stage.

---

[4] Stephens' assertion that the "payments and benefits provided are in discharge of the liabilities of the Company [Time Inc.] to you," and subsequent argument that somehow this means only Time Inc. is released under the terms of the agreement and that "[t]his language does not discharge any liabilities of Counterclaim Plaintiffs in this lawsuit" (*see* Dkt. # 38 at 5), can only be described as ignoring these clear facts pled by Counterclaim Plaintiffs that make it abundantly clear that the terms of the release run to both the Plan and Lescaille. Stephens' arguments are simply not true.

[5] Stephens' argument that "Counterclaim Plaintiffs do not point to any provision of the Release that they believed are violated" is nonsense. (Dkt. # 38 at 6.) In the Amended Counterclaim, Counterclaim Plaintiffs have explicitly set forth the general release terms that Plaintiff has violated, and also specifically alleged that the filing of her legal claims this action breached those terms. (Dkt. # 37 at ¶¶ 12-13, 16-17, 21, 34-35.) Further, Stephens' intimation that the agreement she signed is somehow a separate, stand-alone document from the general release is directly contrary to the facts as pled (which must be accepted as true at this stage of the proceedings). (Dkt. # 38 at 6.) Those facts include that the agreement plaintiff signed specifically stated that she would be eligible for severance benefits from the Plan only if she "as a condition precedent to receiving such benefits, 'sign[ed] and return[ed] this letter agreement ("Agreement") together with the attached General Release (Exhibit A) the ("Release") as described below. A copy of the Severance Plan is enclosed." (Dkt. # 37 at ¶ 9, Ex. 2.) There can be no question from these allegations that the agreement and general release are part of the same document (in fact, the general release is an exhibit to the agreement). Stephens is once again playing fast and loose with the facts.

Stephens' remaining arguments regarding Count II of the counterclaim are also not appropriate for consideration at the motion to dismiss stage. First, this Court has already noted that Stephens' argument that the Amended Counterclaim should be dismissed because the various plan documents relied upon by Counterclaim Plaintiffs are not part of the plan terms (*see* Dkt. # 38 at 3-5) is not appropriate for consideration at this stage of the litigation. As the Court noted, at the motion to dismiss stage, "it is sufficient for Counterclaim Plaintiffs to allege a claim under § 1132(a)(3) under the theory that the cited Plan documents are part of the Plan terms." (*See* Dkt. # 31 at 18 (expressly noting that "[t]he Court has not determined—*and need not determine at this stage*—whether the termination letter Agreement and release qualify as terms of the TCS Plan.") (emphasis added).)

Stephens makes much ado about the fact that Counterclaim Plaintiffs attached to the Amended Counterclaim as Exhibit 1 the summary plan description for the Plan and not the separate TCS Severance Plan document. Stephens attempts to miscast this as an effort to engage in misdirection and a failure to acknowledge the existence of a separate TCS Severance Plan document. It is not, as it is perfectly consistent with ERISA that the terms of a plan be both set forth in a formal plan document and then described in plain language in a separate summary plan description, and that a summary plan description can be relied on as evidence of the terms of the plan. *Bd. of Trustees of Nat. Elevator Indus. Health Ben. Plan v. Montanile*, 593 F. App'x 903, 909 (11th Cir. 2014), rev'd and remanded on other grounds sub nom. *Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 193 L. Ed. 2d 556 (2016) (noting that, even post-

*Cigna v. Amara*, provisions of an SPD can be enforced where the terms of the SPD do not conflict with the other governing plan documents); *see also Garrett v. Prudential Ins. Co. of Am.*, 107 F. Supp. 3d 1255, 1269 n.9 (M.D. Fla. 2015) (relying on SPD as evidence of Plan terms where it did not conflict with other plan document). Moreover, as the Court has already ruled, a determination of whether the terms of the Plan as set forth in the summary plan description or any other document are part of the Plan and enforceable is not to be made at the pleading stage. (*See* Dkt. # 31 at 18 (expressly noting that "[t]he Court has not determined—*and need not determine at this stage*—whether the termination letter Agreement and release qualify as terms of the TCS Plan.") (emphasis added).)

Further, while not material at this stage of the proceedings, Counterclaim Plaintiffs have previously submitted to the Court the TCS Severance Plan document in prior briefing. (*See* Dkt. # 8-1 (Defendants' Motion to Dismiss, Exhibit A).) The summary plan description describing the terms of the Plan that is attached to the Amended Counterclaim is perfectly and entirely consistent with the TCS Severance Plan document, as that document states that:

> TCS may, in its complete discretion, adopt a severance program that provides severance benefits to one or more Eligible Persons (a "*Severance Program*"). If a Severance Program is adopted, severance benefits shall be provided under the terms of the program. Except as otherwise provided in this Section 3 or any Severance Program, no employee of TCS shall have a right to receive a severance benefit upon termination of employment – regardless of the reason that employment terminates.

(Dkt. # 8-1 at 2.) Accordingly, the TCS Severance Plan document specifically contemplates that terms of the severance program will be set forth in separate program

8

documents which are also part of the Plan, such as the summary plan description and the Severance Program Letter Agreement Stephens received.

As noted above, the Eleventh Circuit has expressly recognized that "[e]nforceable plan terms may be found in more than one document." *Montanile*, 593 F. App'x at 910-11 (citing *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83, 115 S. Ct. 1223, 1230, 131 L. Ed. 2d 94 (1995) ("In the words of the key congressional report, '[a] written plan is to be required in order that every employee may, on examining <u>the plan documents</u>, determine exactly what his rights and obligations are under the plan.'") (quoting H.R. Conf. Rep. No. 93-1280, at 297, as reprinted in 1974 U.S.C.C.A.N. 5038, 5077-78) (emphasis added)).) More specifically, ERISA "does not state that the … requirements of each plan must be in the same 'written instrument' that establishes and maintains the Plan." *Id.*; *see also Myron v Trust Co. Bank Long Term Disability Ben. Plan*, 522 F. Supp. 511 (N.D. Ga. 1981), *aff'd without op.* 691 F.2d 510 (11th Cir. 1982), cert den. 462 U.S. 1119, 77 L. Ed. 2d 1348, 103 S. Ct. 3086 (1983) (for purpose of "written instrument" requirement of 29 USCS § 1102(a)(1), written instrument need not be one all-inclusive document); *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1275 n.8 (11th Cir. 2005) (noting that "other instrument[s] under which the plan was established or is operated" could be considered plan documents (citing ERISA § 104(b)(2), 29 U.S.C. § 1024(b)(2), and *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 653 (4th Cir. 1996) ("the language 'other instruments under which the plan is established or operated' encompasses formal or legal documents under which a plan is set up or managed")).). Moreover, terms of a plan in a separate document are enforceable

especially where, as here, the plan document expressly contemplates those terms being set forth in a separate document.[6] *Montanile*, 593 F. App'x at 901-910 ("The terms specified in that summary plan description are enforceable, pursuant to § 1132(a)(3) because … the Trust Agreement contemplated the rights and obligations would be set forth in a separate document."). Accordingly, in this case there is no basis to dismiss at the pleading stage a claim by Counterclaim Plaintiffs based, in part, on the terms of the summary plan description for the Plan.

Like her argument regarding the enforceability of various plan documents, Stephens' assertion that the Amended Counterclaim must be dismissed because her claims in this action fall outside the scope of the Release and therefore bringing this action did not violate the terms of the Plan goes to the merits of the counterclaims and is not an appropriate argument at the motion to dismiss stage. To survive a motion to dismiss, a counterclaim need only allege facts that "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and all well-

---

[6] Plaintiff's cited authority of *Cigna Corp. v. Amara*, 563 U.S. 421 (2011), says no differently. As the Eleventh Circuit has recognized, the situation in *Amara* was one where a letter was purporting to set forth terms of the plan that were inconsistent with those actually in the plan document, and *Amara* does not suggest that plan terms in a writing other than the actual plan document (such as a summary plan description) which are consistent with those in the plan document are precluded from enforcement. *Montanile*, 593 F. App'x. at 910 ("*Amara* only precludes courts from enforcing summary plan descriptions, pursuant to § 1132(a)(1), where the terms of that summary conflict with the terms specified in other, governing plan documents. However, the Amara Court had no occasion to consider whether the terms of a summary plan description are enforceable where it is the only document that "specif[ies] the basis on which payments are made to and from the plan," as required by § 1102(b). … Indeed, the *Amara* Court's rejection of the proposition that summary plan descriptions '*necessarily* may be enforced . . . as the terms of the plan itself' leaves open the possibility that terms in those summaries may, at times, be enforced, even though they are not always enforceable.") (emphasis in original) (citing *Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey*, 663 F.3d 1124, 1131 (10th Cir. 2011) (holding that *Amara* did not prevent a court from giving deferential review to a Plan's decision regarding a term found only in a summary plan description because "the SPD does not conflict with the Plan or present terms unsupported by the Plan; rather, it is the Plan")).

pleaded facts must be accepted as true and construed in the light most favorable to Counterclaim Plaintiffs, *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013). In other words, a motion to dismiss is "not a procedure for resolving a conflict between the parties about the facts or the substantive merits of the [counterclaim] plaintiff's case." *See* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (3d. ed. 2004). Thus, it is not appropriate at this stage to address the merits of the case by debating whether Stephens' bringing this action breached or did not breach the terms of the Release or her obligations under the terms of the Plan. To proceed, it is enough the Amended Counterclaim clearly alleges that by bringing this action she has done so. (*See* Dkt. # 37 at ¶¶ 34-39.) For these reasons, Stephens' Motion to Dismiss the Amended Counterclaim should be denied.

Putting aside the fact that Stephens' arguments are improper at the motion to dismiss stage, a review of Stephens' Complaint and the facts alleged in this case reveals that her arguments regarding her claims falling outside the scope of the Release are contrary to her own allegations and do not hold water. Stephens boldly asserts that "[t]he claims for in [sic] this case did not arise before March 15, 2016, 90 days after Stephens filed her claims for benefits, when Counterclaim Plaintiff violated their ERISA duties by ignoring Stephens claims." (Dkt. # 38 at 6.) Stephens' Complaint is replete with allegations making it clear that she is claiming a right to severance benefits from the Plan as a result of the "termination letter and severance package" that she received "[o]n or about July 23, 2015." (*See* Dkt. # 1 at ¶ 13.) Indeed, without such letter agreement, her claim for alleged severance benefits completely falls apart because that is the letter which

contains the reference to the "Time Inc. Severance Plan for Regular Employees" on which she relies to stake her claim for more severance benefits. (*Id.* at ¶¶ 14-15.) It was after receipt of this letter agreement describing her severance package that Stephens signed the letter agreement and general release. (*Id.* at ¶¶ 14-15.) Further, as alleged by Counterclaim Plaintiffs, it was at the moment that Stephens agreed to "sign and adhere to the Agreement waiving, releasing and forever discharging Counterclaim Plaintiffs from any and all claims, complaints and liabilities…." that she waived all right to claim additional severance benefits from the Plan or assert claims based on her alleged participation in the Plan (such as her claim for a violation of fiduciary responsibilities allegedly owed to her as a participant in the Plan). (*See* Dkt. # 37 at ¶¶ 8-13, 16-17, 21.) The fact that Stephens later chose to pursue those waived rights and claims in breach of the agreement and the Plan by filing a claim for benefits and requesting documents from the Plan is of no moment and does not mean those claims "arose" after the agreement was signed.[7] Rather, that was simply the consummation of the breach of the Plan for which the Counterclaim Plaintiffs seek relief.

---

[7] *In re Managed Care v. Wellpoint*, 756 F.3d 1222 (11th Cir. 2014), is distinguishable from this case. *Wellpoint* dealt with the settlement agreement for a class action lawsuit. The settlement agreement included a release of all claims that arose prior to the effective date of that agreement. In deciding whether Plaintiffs' new claim for ERISA benefits "arose prior to" the effective date of and thus were barred by the Settlement Agreement, the Court held that an ERISA claim based on the denial or underpayment of benefits does not "accrue" until the application for benefits is denied. Here, the release at issue is a condition precedent to Plaintiff receiving severance benefits under an ERISA welfare plan. In order to receive the severance payment, to which she is not otherwise entitled, Plaintiff agreed to give up any *additional* claims that she might have relating to or arising out of her employment, including any claims to additional benefits under the Plan. Thus, Plaintiff waived any claim she had to *additional* severance benefits by accepting the contractual right to $34,693.65 in severance pay under the TCS Plan as set forth in the Severance Program Letter Agreement. While *Wellpoint* might permit her to claim that she was wrongfully denied the $34,693.65 she was promised by the Severance Program Letter Agreement (a claim which could arise after the date she signed the agreement), she has admitted that she received that $34,693.65 in severance pay. She cannot attempt to circumvent the release by claiming an unsupported and mysterious right to otherwise released benefits materialized and thus "accrued" after the date of the release

Similarly, Stephens' argument that her severance benefits were somehow preserved under the terms of the release because they are "vested accrued benefits" does not withstand scrutiny. (*See* Dkt. # 38 at 6.) Discretionary severance benefits are the consummate form of unvested, unaccrued benefits. *See, e.g.*, *Sears v. Union Cent. Life Ins. Co.*, 222 F. App'x 474, 480 (6th Cir. 2007) (citations omitted) (collecting cases noting that severance benefit plans are welfare benefits plans under ERISA and do not automatically accrue or vest, but instead "vest under the terms of the plan"); *Bradwell v. GAF Corp.*, 954 F.2d 798, 801 (2d Cir. 1992) ("Under ERISA, moreover, severance benefits are not vested."); *Sejman v. Warner-Lambert Co.*, 889 F.2d 1346, 1348 (4th Cir. 1989) ("[U]nder ERISA, severance benefits are contingent and unaccrued . . ."). This is especially true in Stephens' case, where her severance benefits under the Plan were expressly conditioned on the execution of the very agreement and general release waiving the claims she now attempts to assert.[8] Certainly such contentions, which concern the facts of the underlying benefits and whether they are vested or accrued, are not subject to determination at the pleading stage based on the allegations in the Amended Counterclaim, and Counterclaim Plaintiffs' claim under ERISA § 1132(a)(3) sufficiently alleges a plausible entitlement to relief if the facts as pled are taken as true.

---

when she made an unsupported claim for benefits to the Plan. And, certainly this determination is one concerning the merits of the counterclaims, and not whether they have been adequately pled at the pleading stage.

[8] Stephens cites to the Plan's summary plan description for the contention that "[w]hen Stevens became a participant in the TCS Plan her rights under the plan vested." (Dkt. # 38 at 6.) No such language appears in the summary plan description. (*See* Dkt.# 37-1.)

## III. CONCLUSION

For the forgoing reasons, Counterclaim Plaintiffs ask that Stephens' Motion to Dismiss the Amended Counterclaim be denied.

In the alternative, should the Court find that Counterclaim Plaintiffs' claims are subject to dismissal, Counterclaim Plaintiffs explicitly request permission from the court to amend their counterclaims and re-plead the allegations to sufficiently allege a request for declaratory relief premised upon a pending federal claim and the Declaratory Judgment Act and a claim seeking equitable restitution under ERISA § 1132(a)(3) to enforce the terms of the TCS Plan, including the TCS Severance Plan document, by imposing a constructive trust or equitable lien upon the portion of the specific and identifiable severance payment fund in Stephens' possession.

Respectfully submitted this 4th day of December, 2017.

/s/ *Wesley E. Stockard*
Bernard K. Schott
bschott@littler.com
Florida Bar No. 0107756
LITTLER MENDELSON, P.C.
111 North Magnolia Avenue, Suite 1250
Orlando, FL  32801.2366
407.393.2900
407.393.2929 (Fax)

Wesley E. Stockard*
wstockard@littler.com
Georgia Bar No. 159090
Rachel Purcell*
rpurcell@littler.com
Georgia Bar No. 743007
LITTLER MENDELSON, P.C.
3344 Peachtree Road N.E., Suite 1500
Atlanta, GA  30326.4803
404.443.3547
404.233.2361 (Fax)

**Admitted pro hac vice*

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of December 2017, **DEFENDANTS/COUNTERCLAIM PLAINTIFFS' RESPONSE IN OPPOSITION TO PLAINTIFF'S/COUNTERCLAIM DEFENDANT'S MOTION TO DISMISS AMENDED COUNTERCLAIM** was filed electronically through the ECF system, is available for viewing and downloading from the ECF system and will be sent electronically to the registered participants identified on the Notice of Electronic Filings, including Plaintiff's counsel of record as follows:

William D. Mitchell
mitchlaw@askmitch.net

John A. Yanchunis
jyanchunis@forthepeople.com

Marissa Glassman
mglassman@forthepeople.com

/s/ Rachel Purcell
Rachel Purcell
ATTORNEY FOR DEFENDANTS